**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Case No. 05-10867-DPW**

**CHARLES GITTO, JR., PRESIDENT & SOLE SHAREHOLDER OF**
**TRADEX CORPORATION**

**v.**

**PHOEBE MORSE, UNITED STATES TRUSTEE**

---

**ON APPEAL FROM AN ORDER**
**OF THE BANKRUPTCY COURT**

---

**BRIEF OF APPELLEE**

---

Lisa D. Tingue
BBO No. 633275
Office of the United States Trustee
United States Department of Justice
446 Main Street
Worcester, MA 01608
(508) 793-0555

Phoebe Morse
United States Trustee
Office of the United States Trustee
United States Department of Justice

Dated: May 27, 2005

# **TABLE OF CONTENTS**

Page

STATEMENT OF JURISDICTION                                           1

STATEMENT OF ISSUE PRESENTED                                        1

STANDARD OF APPELLATE REVIEW                                        2

STATEMENT OF THE CASE                                               2

STATEMENT OF THE FACTS                                             3

    I.  Statutory Framework                                      3

    II. Factual Background                                        4
        A.    Clinton Savings Bank Seeks              5
              Emergency Relief
        B.    Gitto Asserts His Fifth Amendment       7
              Rights
        C.    Mrs. Gitto Appears                      7
        D.    The United States Trustee Again         8
              Requests Tax Returns
        E.    The United States Trustee Moves         8
              For Appointment of a Chapter 11 Trustee

ARGUMENT                                                          10
THE BANKRUPTCY COURT DID NOT ABUSE ITS
DISCRETION IN APPOINTING A CHAPTER 11 TRUSTEE

    I.     Section 1104                                      10

    II.    The Bankruptcy Court Acted Within its             13
             Discretion in Ordering the Appointment of a
             Chapter 11 Trustee

    III.   Evidentiary Standard                             14

CONCLUSION                                                        17

i

# TABLE OF AUTHORITIES

## CASES

Berner v. Delahanty II, 129 F.3d 20 (1st Cir. 1985)                          1

CFTC v. Weintraub, 471 U.s. 343 (1985)                                    3, 11

Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington),          15
922 F.3d, 6 n.3 (1st Cir. 1993)

Gannett v. Carp (In re Carp); 340 F.3d 15 (1st Cir. 2003)                     14

Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991)               15

In re Eichorn, 5 B.R. 755 (Bankr. D. Ma. 1980)                               11

In re Abdallah, 778 F.2d 75 (1st Cir. 1985)                                   1

In re American Colonial Broad. Corp., 58 F. 794 (1st Cir. 1985)               1

In re Castillo, 297 F.3d 940 (9th Cir. 2002)                                  4

In re Deena Packaging Industries, Inc., 20 B.R. 705 (Bankr. S.D.N.Y. 1983)   10

In re Devers, 759 F.2d 751 (9th Cir. 1985)                                   10

In re Columbia Gas Sys., Inc., 33 F.3d 294 (3d Cir. 1994)                     4

Gannet v. Carp(In re Carp), 340 F.3d 15 (1st Cir. 2003)                       14

In re Garland Corp., 6 B.R. 456 (Bankr. App. P. 1st Cir. 1980)               10

In re G-I Holdings, Inc., 295 B.R. 502 (D. N.J. 2003), affirmed               2
Official Committee of Asbestos Claimants v. G-I Holdings, Inc.
(In re G-I Holdings, Inc.), 385 F.3d 313 (3d Cir. 2004)

In re Gitto Global, 2005 WL 1027348, at *1 (D. Mass. May 2, 2005)             2

In re La Sherene, Inc., 3B.R. 169 (Bankr. N.D. Ga. 1980)                     12

In re L.S. Good & Co., 8 B.R. 312 (Bankr. N.D. W.Va. 1980)                   12

In re Mako, Inc., 102 B.R. 809 (Bankr. E.D. Okla. 1988)                      11

In re Marvel Entertainment Group, Inc., 140 F.3d. 463 (3d Cir. 1998)       1, 11

In re McCorhill Publishing, Inc., 73 B.R. 1013 (Bankr. S.D.N.Y. 1987)     12

In re Microwave Products of America, Inc., 102 B.R. 666 (Bankr. W.D. Tenn. 1989)     11

In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820 (1st Cir. 1990)     4

In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518 (Bankr. E.D.N.Y. 1989)     10, 11, 12

In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989)     10, 12

In re The Bible Speaks, 74 B.R. 511 (Bankr. D. Mass. 1987)     12

Kowal v. Malkemus (In re Thompson), 965 F.2d 1136 (1st Cir. 1992)     15

Petit v. New England Mort. Services, Inc., 182 B.R. 64 (D. Me. 1995)     10, 16

United States Trustee v. Revco D.S., Inc. (In re Revco D.S., Inc.),     4
898 F2d 498 (6th Cir. 1990)

U.S. v. Pierro, 32 F.3d 611 (1st Cir. 1994)     1

In re Winthrop Nurseries, Inc., 50 F.3d 72 (1st Cir. 1995)     2

## STATUTES

11 U.S.C. § 307     4

11 U.S.C. § 341

11 U.S.C. § 521     3, 4, 10

11 U.S.C. § 1104(a)(1)     3, 9, 11, 13

11 U.S.C. § 1104(a)(2)     3, 9, 11, 13, 15

11 U.S.C. § 1107(a)     10

28 U.S.C. § 158(a)(1)     1

28 U.S.C. § 158(a)(3)     1

28 U.S.C. § 581-589     4

28 U.S.C. § 586(c)(3)     4

## **OTHER**

H.R. Rep. No. 95-595, 109(1977)                                                4

Fed. R. Bankr. P. 1007(b)                                                   3, 10

Fed. R. Bankr. P. 1008                                                      3, 10

Fed. R. Bankr. P. 7001                                                     14, 15

Fed. R. Bankr. P. 8001(a)                                                       1

Fed. R. Bankr. P. 8013                                                          2

Fed. R. Bankr. P. 9014                                                         15

2 James F. Queenan, Jr. et al., CHAPTER 11 THEORY AND PRACTICE § 14.04        14
(LRP Pub. 1994)

2 James F. Queenan, Jr. et al., CHAPTER 11 THEORY AND PRACTICE § 14.28        12
(LRP Pub. 1994)

## STATEMENT OF JURISDICTION

A district court may hear appeals from final judgments, orders and decrees of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1) or with leave of court, from interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3). An interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." In re American Colonial Broad. Corp., 758 F. 794, 801 (1st Cir. 1985). An appellate court has a duty to confirm of its own jurisdiction before proceeding to the merits of a case. See Berner v. Delahanty II, 129 F.3d 20, 23 (1st Cir. 1997); U.S. v. Pierro, 32 F.3d 611, 618-19 (1st Cir. 1994).[1/]

Generally, an order to appoint a chapter 11 trustee is a final order. In re Marvel Entertainment Group, Inc., 140 F.3d. 463, 470 -471 (3d Cir. 1998). This appeal arises from an order issued by the United States Bankruptcy Court for the District of Massachusetts ("bankruptcy court" or "court") on April 7, 2005, granting the United States Trustee's Motion to Appoint a Chapter 11 trustee.

## STATEMENT OF ISSUE PRESENTED

Where the United States Trustee ("UST") moved for appointment of a Chapter 11 trustee in a debtor corporation's chapter 11 bankruptcy case, did the bankruptcy court abuse its discretion in appointing an operating chapter 11 trustee?

---

[1/]    Pending with this Court is the United States Trustee's motion to dismiss Charles Gitto's appeal and to strike his brief. Charles Gitto failed to file a notice of appeal. Absent exceptional circumstances, only a party who files a notice of appeal properly invokes the appellate jurisdiction of the district court. Fed. R. Bankr. P. 8001(a). See In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985).

## STANDARD OF APPELLATE REVIEW

A district court applies a clearly erroneous standard to a bankruptcy court's findings of fact and conducts a *de novo* review of conclusions of law. *See* Fed. R. Bankr. P. 8013; In re Winthrop Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995); In re Gitto Global, 2005 WL 1027348, at *1 (D. Mass. May 2, 2005). A district court reviews a bankruptcy court's decision to appoint a chapter 11 trustee for abuse of discretion "under either section of [11 U.S.C.] § 1104(a) . . . . " In re G-I Holdings, Inc., 295 B.R. 502, 508 (D. N.J. 2003), *affirmed* Official Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 385 F.3d 313 (3rd Cir. 2004).

## STATEMENT OF THE CASE

Tradex Corporation ("Tradex" or the "Debtor") sought relief under the debt reorganization provisions of chapter 11 of the Bankruptcy Code by petition filed February 12, 2005.[2/] App. 001-04. The United States Trustee moved the bankruptcy court to appoint a chapter 11 trustee in Tradex's bankruptcy case on April 1, 2005. App. 015-19. After notice and a hearing, the bankruptcy court issued its Order allowing the UST's motion on April 7, 2005. App. 054. The bankruptcy court approved, on April 13, 2005, the appointment of M. Ellen Carpenter, Esq. as chapter 11 trustee of Tradex. App. 060. On April 18, 2005, Tradex filed its Motion to Reconsider, which was denied on April 19, 2005. App. 061-147. Tradex filed its notice of appeal on April 25, 2005. App. 148-49.

---

[2/]    Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101 *et seq.*

2

## STATEMENT OF THE FACTS

### I.    Statutory Framework

The Bankruptcy Code ordinarily permits a chapter 11 debtor to retain its assets and to conduct its operations through existing management as a "debtor-in-possession." 11 U.S.C. § 1107(a).   A debtor-in-possession is a fiduciary of all creditors and, with certain exceptions, has the rights, powers, functions and duties of a trustee.  *Id.*; CFTC v. Weintraub, 471 U.S. 343, 355 (1985) (debtors in possession are fiduciaries of creditors). Bankruptcy Code section 521(1) and Rules 1007(b) and 1008 of the Federal Rules of Bankruptcy Procedure underscore a chapter 11 debtor's fiduciary responsibilities by requiring it to list accurately all of its assets and liabilities.

Section 341 requires a meeting (the "341 meeting") of the debtor and its creditors within a reasonable time of the filing of the petition for relief.  Section 343 requires that the debtor appear at the meeting and submit to an examination under oath.  At the meeting, creditors, any examiner or trustee in the case, and the United States Trustee may examine the debtor.

Section 1104(a)(1) authorizes the court to appoint an operating chapter 11 trustee, removing management, upon a sufficient showing of "cause," including fraud, dishonesty, incompetence or gross mismanagement of the affairs of a chapter 11 debtor, either before or after the commencement of the case, or similar cause.  Alternatively, section 1104(a)(2) authorizes the court to appoint an operating chapter 11 trustee upon a sufficient showing that the appointment of a trustee is in the best interest of creditors.

United States Trustees are officials of the Department of Justice appointed by the

3

Attorney General to supervise the administration of bankruptcy cases and trustees.  *See* 28

U.S.C. 581-589 (specifying the powers and duties of United States Trustees).[3/]  United States

Trustees have promulgated Operating and Reporting Requirements for Chapter 11 Cases

under 28 U.S.C. § 586(c)(3), which require all chapter 11 debtors to submit copies of their

Federal tax returns for the three most recent years shortly after commencing a chapter 11

case.

## II.    Factual Background

Tradex sought relief  under the debt reorganization provisions of chapter 11 of the

Bankruptcy Code by petition filed on February 16, 2005.  App. 001-04.[4/]  Charles Gitto, Jr.

("Gitto") signed the petition as the president of Tradex.  App. 002.  The petition filed by

Tradex was a "skeletal" petition, in that it did not contain a list of creditors, schedules of

assets and liabilities, or a statement of financial affairs, as required by 11 U.S.C. § 521.

App. 001-04.  Tradex's sole business was managing and leasing commercial real property,

located in Lunenburg, Massachusetts.  G. Br. 4.

---

[3/]    *See also* In re Columbia Gas Sys., Inc., 33 F.3d 294, 296 (3d Cir. 1994) (United States Trustees oversee the bankruptcy process, protect the public interest, and ensure that bankruptcy cases are conducted according to law) (*citing* H.R. Rep. No. 95-595, 109 (1977)); United States Trustee v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 499 (6th Cir. 1990) ("[t]he United States trustee, an officer of the Executive Branch, represents . . . [the] public interest"); In re Castillo, 297 F.3d 940, 950 (9th Cir. 2002) ("The United States Trustee is the 'watchdog' of the bankruptcy system . . . charged with preventing fraud and abuse and with 'fill[ing] the vacuum' caused by possible creditor inactivity.").  Section 307 of the Bankruptcy Code provides that a "United States Trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ."  11 U.S.C. 307.  *See also* In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820, 824 (1st Cir. 1990) (construing section 307).

[4/]    The government refers to the record below by citing to the appendices submitted by the parties ("App.") and to the appellant brief submitted by Charles Gitto, Jr., President and Sole Shareholder of Tradex Corporation ("G. Br.")

On February 16, 2005, the bankruptcy court issued an Order to Update, ordering Tradex to file with the court the appropriate schedules and statements. App. 156. One week later, Tradex filed a motion to extend the deadline for filing its schedules and statements, stating as grounds "the extremely complicated nature of the case, including difficulties accurately ascertaining and scheduling the Debtor's various assets and liabilities." App. 361-62. The court denied the motion to extend. App. 363.

On March 3, 2005, Tradex filed its schedules and statement of financial affairs. App. 364-98. Gitto, on behalf of Tradex, signed these documents under penalty of perjury, affirming that they were true and correct to the best of his knowledge. App. 377, 380, 393, 398. In its schedule "B," Tradex listed an account receivable for rents due from "S&E Specialty Polymers, LLC." App. 367. Tradex also scheduled 740,000 pounds of "Vitrolite" inventory as an asset valued at $3,700,000. App. 368.

### A.    Clinton Savings Bank Seeks Emergency Relief

The day that Tradex filed its bankruptcy petition, Clinton Savings Bank ("Clinton") filed with the bankruptcy court an emergency motion for relief from the automatic stay to permit Clinton to enforce its mortgage interest in Tradex's real property and to foreclose on the its equity of redemption in the property. App. 158-259. As grounds for its motion, Clinton asserted allegations, among others, that:

(1) Tradex filed its bankruptcy petition in bad faith and with the intent to delay and frustrate Clinton's efforts to enforce its rights;

(2) Tradex was involved in the fraudulent scheme conducted by Gitto Global

5

Corporation ("Gitto Global"), a related entity;[5] and

(3)  Tradex has no equity in its real property after considering both Clinton's security interest in the property, and the attachment against the property in the sum of $30,000,000.00 by LaSalle Business Credit, LLC ("LaSalle").[6]  App.158-65.

By way of opposition to Clinton's motion, Tradex denied that its bankruptcy petition was filed in bad faith, stated that LaSalle's claim was disputed, and averred that it had unencumbered real property and unencumbered personal property in the form of "Vitrolite" inventory.[7]  App. 260-62.  The bankruptcy court denied the motion but  ordered Tradex to make adequate protection payments to Clinton under U.S.C. § 362(c)(2)(B).  App. 012 - 013. To free up funds for payments to Clinton, the court ordered a reduction in the "exorbitant" management fees that Gitto was charging Tradex, stating that "[t]o permit the Debtor's principal to use the Debtor's cash flow as his personal piggybank while ignoring the rights of the Bank is unconscionable."  App. 012.

---

[5]      Gitto Global is an entity related to Tradex and, until December 17, 2004, Gitto Global leased and operated a manufacturing business out of real property owned by Tradex. App. 158. On September 24, 2004, Gitto Global filed for chapter 11 bankruptcy relief (Case No. 04-45386-JBR). App. 158 n.1. Gitto Global subsequently sold its assets and its manufacturing business, still located on Tradex's property. The business is owned and operated by an independent successor corporation. Gitto Global's chapter 11 case was eventually converted to one under chapter 7. An examiner's report was filed in Gitto Global's bankruptcy case, and was the subject of an appeal in this Court, Case No. 05-10334-DPW.

[6]      LaSalle was granted this attachment in the context of litigation it commenced in this Court (Case No. 04-1227-DPW), in which LaSalle asserts counts of RICO violations and conspiracy to defraud against Tradex, Gitto, and others.  App. 420-97.

[7]      The ownership of the Vitrolite inventory is disputed.  App. 024.

### B.    Gitto Asserts His Fifth Amendment Right

The bankruptcy court scheduled the meeting of creditors under 11 U.S.C. § 341 for March 15, 2005.  App. 359-60.  The United States Trustee, through her analyst, John Doherty ("Doherty"), conducted the meeting.  App. 582-634.

On advice of his counsel, Gitto did not attend the 341 meeting having asserted his Fifth Amendment right against self-incrimination.  G. Br. 4 n. 3.

### C.    Mrs. Gitto Appears

Gitto sent his wife, Krista Gitto ("Mrs. Gitto"), to testify at the 341 meeting in his stead.  App. 582-634.  At the meeting, Mrs. Gitto identified her position in Tradex as the "secretary" or "general secretary."  App. 584.  Counsel to Tradex identified Mrs. Gitto as "office manager."  App. 585.  Mrs. Gitto's testimony included the following:

> (1)    Tradex held no security deposits (App. 594-95);
>
> (2)    No one had ever borrowed money from Tradex (App. 595);
>
> (3)    There were no Gitto-related corporations that did business with Tradex (App. 595);
>
> (4)    Tradex granted to Clinton a mortgage for which it received no consideration[8] (App. 605-15); and
>
> (5)    Tradex claimed ownership of a large inventory of "Vitrolite," though Mrs. Gitto could not identify when Tradex purchased it, how it was paid for, or from whom it was acquired. (App. 596-604, 628-30).

---

[8]    When asked if Tradex received any new benefit for giving the mortgage to Clinton, Mrs. Gitto replied, "No."  App. 608.

7

### D.    The United States Trustee Again Requests Tax Returns

At the conclusion of Mrs. Gitto's testimony, Doherty continued the meeting generally and the proceedings were adjourned.  App. 633.  Doherty reminded Tradex's counsel, however,  that Tradex needed to provide the United States Trustee with the Federal tax returns requested in the Operating and Reporting Requirements for Chapter 11 Cases. App. 568, 570-71.  Tradex did not produce any tax returns until the eve of the hearing on the UST's motion to appoint a Chapter 11 trustee. App. 567.

### E.    The United States Trustee Moves For Appointment Of A Chapter 11 Trustee

On April 1, 2005, the UST filed her motion ("Motion") for appointment of a chapter 11 trustee pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2), and requested expedited determination.  App. 015-19.  As grounds for the appointment of a trustee, the UST cited the existence of a grand jury investigation into allegations of fraud involving Gitto and Tradex, Gitto's failure to appear and testify at the 341 meeting, and issues raised by Mrs. Gitto's testimony.  App. 016-17.  In its April 6, 2005 objection, Tradex admitted a grand jury was investigating allegations of fraud against Gitto and Tradex.  App. 021.  LaSalle supported the UST's Motion and no other creditor objected to the Motion.  App. 573, 563-81.

On April 6, 2005, Tradex faxed to the United States Trustee a copy of its 2003 Federal tax return.  App. 543-62, 567.  The United States Trustee submitted the tax return to the Bankruptcy Court at the April 7, 2005 hearing on the Motion.  App. 568.  Tradex's counsel did not object.

The information contained in the tax return was at odds with Tradex's petition and

schedules, and with Mrs. Gitto's sworn testimony at the 341 hearing. The tax return

revealed the following facts which were inconsistent with Mrs. Gitto's testimony and the

Debtor's petition:

(1) Tradex holds a security deposit from Gitto Global (App.554). The security deposit is not disclosed in Tradex's schedules and Gitto Global is not listed as a creditor. (App. 374). However, Mrs. Gitto testified that the Debtor dis not have any security deposits (App.594-95);

(2) Related companies owe money to Tradex (App. 554). However, these receivables are not disclosed in Tradex's schedules. (App. 367-68). Mrs. Gitto testified that no entity owed money to Tradex. (App. 595);

(3) At year end, Tradex was obligated on an outstanding loan to Gitto in the amount of $1,078,133.00, having made a partial repayment to Gitto during 2003 in the amount of $153, 816.00 (App.549, 561). However, Tradex did not disclose the loan or payments to an insider in its schedules or statements (App. 374, 382); and

(4) The tax return does not show Vitrolite inventory as an asset of Tradex, contrary to Tradex's schedules and 341 testimony. (App. 543-62).

At the conclusion of the hearing, the bankruptcy court found that the facts and issues

addressed by the UST's motion, the tax return and other facts introduced into evidence at the

hearing, and the history of the case justified the appointment of a chapter 11 trustee, pursuant

to both 11 U.S.C. § 1104(a)(1) and (a)(2). App. 580.

9

**ARGUMENT**

**THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION
IN APPOINTING A CHAPTER 11 TRUSTEE**

**I.    Section 1104**

"A debtor-in-possession is a fiduciary of the creditors . . . ." *Petit v. New England Mort. Services, Inc.*, 182 B.R. 64, 69 D. Me. 1995). A chapter 11 debtor in possession has the rights, powers, functions and duties of a trustee. 11 U.S.C. § 1107(a). Section 521(1) and Fed. R. Bankr. P. 1007(b) and 1008 require a debtor to list accurately <u>all</u> of its assets and liabilities. <u>In re Deena Packaging Industries, Inc.</u>, 20 B.R. 705, 707 (Bankr. S.D.N.Y. 1983). A debtor has a duty of full disclosure to creditors regarding its assets and liabilities.

> One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization. The requirement of full and fair disclosure is not restricted to disclosure statements filed ... in the latter stages of Chapter 11 cases ... Open, honest and straightforward disclosure to the Court and creditors is intrinsic to the entire reorganization process and begins on day one, with the filing of the Chapter 11 petition.

<u>In re Savino Oil & Heating Co., Inc.</u>, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989).[9]

"There is a presumption in a chapter 11 case that the debtor is to continue in control and possession of its business . . . ." <u>In re Garland Corp.</u>, 6 B.R. 456, 461 (B.A.P.. 1st Cir. 1980). However, "[t]he willingness to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the

---

[9] A debtor in possession has a duty to protect and to conserve estate property for the benefit of creditors. <u>In re Devers</u>, 759 F.2d 751 (9th Cir. 1985). A debtor stands in a fiduciary relationship with its creditors; it is enjoined from damaging the estate. *See* <u>In re Sharon Steel Corp.</u>, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988).

10

fiduciary responsibility of a trustee [out of possession] . . . .'" In re Microwave Products of

America, Inc., 102 B.R. 666, 672 (Bankr. W.D. Tenn. 1989), *citing* CFTC v. Weintraub, 471

U.S. 343, 355 (1985).

Section 1104(a)(1) authorizes the court to appoint an operating chapter 11 trustee

upon a sufficient showing of "cause," including fraud, dishonesty, incompetence or gross

mismanagement of the affairs of the debtor, either before or after the commencement of the

case, or similar cause.  In re Eichorn, 5 B.R. 755, 757 (Bankr. D. Ma. 1980).

> A finding of fraud recognizes the existence of some misrepresentation and
> requires a breach of the "duty of each to refrain from even attempted deceit of
> another with whom he deals and the right of the latter to assume he will do
> so." (citation omitted)...
>
> These cases usually involve some blatant attempt by the debtor to deceive
> creditors to the profit of the debtor and the detriment of the creditors.
> (citations omitted)...
>
> Dishonesty appears to be considered by various Courts as a lesser form of
> fraud, still relying on a certain degree of misrepresentation.  (citations
> omitted)...

In re Mako, Inc., 102 B.R. 809, 811 (Bankr. E.D. Okla. 1988).

One of the most fundamental and crucial duties of a debtor-in-possession is to keep

the court and creditors informed about the nature and status of the debtor's affairs.  Marvel,

140 F.3d at 474;  Savino Oil, 99 B.R. at 526.  "Open, honest and straightforward disclosure

to the Court and creditors is intrinsic to the entire reorganization process. . . ."  Savino Oil,

99 B.R. at 526.  "Where . . . the Debtor fails to disclose material and relevant information to

the Court and creditors, a Chapter 11 trustee is required."  *Id.*

Alternatively, section 1104(a)(2) permits the appointment of a trustee without

11

"cause," and creates a flexible standard within which a court may exercise its discretion. *See*

Sharon Steel, 871 F.2d at 1226. Affording the bankruptcy court a wide measure of

discretion in trustee appointments is warranted given the complexities of a chapter 11 case.

2 James F. Queenan, Jr. et al., CHAPTER 11 THEORY AND PRACTICE §14.28 (LRP Pub. 1994).

Many appointment orders involve findings which extend beyond the presence of any

particular culpable behavior, and involve the court's knowledge of the parties and the case as

a whole. *Id.*

The appointment of a chapter 11 trustee is appropriate when the conduct of the

debtor-in-possession constitutes a breach of its fiduciary duty or a threat to the integrity of

the bankruptcy reorganization process. *See* Savino Oil, 99 B.R. at 526; Bible Speaks, 74

B.R. 511, 514 (Bankr. D. Mass. 1987). Courts have held that the failure to maintain

complete and accurate financial records, or the failure to substantiate undocumented

transactions, constitutes gross mismanagement and cause for the appointment of a chapter 11

trustee under § 1104(a)(1). *See* In re McCorhill Publishing, Inc., 73 B.R. 1013, 1017 (Bankr.

S.D.N.Y. 1987). The commingling of the affairs of a debtor-in-possession with those of a

related entity is also cause requiring the appointment of a trustee. *See* In re La Sherene, Inc.,

3B.R. 169, 176 (Bankr. N.D. Ga. 1980)(co-mingling of affairs of debtor and related entities

require independent review); Sharon Steel, 871 F.2d at 1228, citing In re L.S. Good & Co., 8

B.R. 312, 315 (Bankr. N.D.W. Va. 1980) (inter-company transactions and potential conflicts

of interest made impartiality of debtor's current management unlikely). Acrimony between

parties may also constitute grounds for appointment of a chapter 11 trustee under §

1104(a)(2). *See* Bible Speaks, 74 B.R. at 512-13 (legalistic bickering between parties

12

grounds for trustee appointment).

## II.     The Bankruptcy Court Acted Within Its Discretion in Ordering The Appointment of a Chapter 11 Trustee

The bankruptcy court acted well within its discretion when it appointed a chapter 11 trustee in this case. The uncontested evidence before the bankruptcy court gave that court ample evidence to justify a trustee both for cause under § 1104(a)(1) and on the ground that such an appointment would be in the best interest of creditors under § 1104(a)(2).

Verified documents and testimony proffered by the Debtor revealed that the Tradex through it's principal, Gitto, failed to make straightforward and accurate disclosures to the court when the Debtor's schedules did not include all the Debtor's assets, liabilities, and payments made to insiders. The documents and testimony also revealed that Gitto improperly engaged in questionable inter-company transactions and commingled the affairs of Tradex with those of Gitto Global by causing Tradex to grant a mortgage on its assets to collaterize a sale for the benefit of Gitto Global. Moreover, Tradex and Gitto were unable to substantiate Tradex's undocumented acquisition of the Vitrolite inventory. In addition, a grand jury investigation into allegations of fraud on the part of Tradex and Gitto was underway, which militated in favor of a trustee because this meant the debtor's management would be devoting significant attention to that matter - time that necessarily would come at the expense of the debtor's critical efforts to simultaneous reorganize and thereby enhance creditor recoveries. Further Gitto's decision to not make himself available to answer questions regarding the business and financial affairs of the Debtor meant the Debtor could not explain the serious inconsistencies between the debtor's tax returns and the statements

13

the debtor made under penalty of perjury in its bankruptcy filing.[10]    A neutral trustee,

however, will be able to resolve these conflicting statements, and thereby enhance the

Debtor's prospects of rehabilitating.  Furthermore, the Debtor's creditors have levied

substantial allegations, through related litigation and through Clinton's relief from stay

motion, of bad faith, fraud and serious law enforcement violations.  *See also* Gitto v.

Worcester Telegram & Gazette Corp., et al, Case No. 05-10334-DP, Bankruptcy Case No.

04-45386.  Finally, the bankruptcy court had previously found that Gitto had been siphoning

excessive management fees from the Debtor's cash flow.

     Thus, there can be no serious question that it was well within the bankruptcy court's

discretion to order the appointment of a trustee given these troubling facts.  The bankruptcy

court acted appropriately in allowing the UST motion for the appointment of a Chapter 11

trustee.

**III.    Evidentiary Standard**

     The appellant asserts that the party moving for appointment of a chapter 11 trustee

must prove the need for a trustee by clear and convincing evidence.  G. Br. 9.  This is wrong.

In fact, there is disagreement as to the movant's burden, and while some courts have

imposed a clear and convincing standard, this standard has *no statutory basis*.  2 Queenan,

CHAPTER 11 THEORY AND PRACTICE § 14.04 (emphasis supplied).[11]  Bankruptcy Rule 7001

---

[10]It is within the bankruptcy court's discretion to draw a negative inference from an
invocation of Fifth Amendment rights.  *See* <u>Gannett v. Carp (In re Carp)</u>; 340 F.3d 15, 23 (1st
Cir. 2003).

[11]Only the Third Circuit and the Fifth Circuit impose a clear and convincing evidentiary
standard on this question.

mandates that a limited number of bankruptcy disputes be instituted by complaint. Fed. R.

Bank. P. 7001. A request to appoint a trustee is not brought as an adversary proceeding

because it is not one of the matters so designated in Rule 7001.

Instead, trustee appointments are brought as contested matters under Rule 9014, as

are all matters not specified in Rule 7001. *See* Fed. R. Bankr. P. 9014 (rule governing

contested matters). Contested matters  are brought by motion. Fed. R. Bankr. P. 9014(a).

*See* Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington), 992 F.2d 3, 6 n.3

(1ˢᵗ Cir. 1993) ("'[t]he Bankruptcy Rules recognize three distinct types of proceedings within

a bankruptcy case: adversary proceedings, administrative proceedings, and contested

matters.'"). *Cf.* Kowal v. Malkemus (In re Thompson), 965 F.2d 1136 (1st Cir. 1992)

(discussing the differences between the underlying bankruptcy case and an adversary

proceeding).

There is no good reason to subject a trustee appointment motion under Rule 9014 to

a heightened  standard of proof. To the contrary, the Supreme Court has stated that civil

matters typically need not be decided under such heightened standards. Grogan v. Garner,

498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) ("... we presume that ... [the

preponderance] ... standard is applicable in civil actions between private litigants unless

'particularly important individual interests or rights are at stake.' "). The question of an

operating trustee is not such an important matter that it requires heightened proof. First,

Congress allows chapter 11 trustees to be appointed without cause under subsection

1104(a)(2), and trustees are appointed in every chapter 7, 12, and 13 case - which are the

vast majority of bankruptcy cases. Second, debtors in possession already operate under

significant restrictions under the Bankruptcy Code, which means that the appointment of a trustee does not yield dramatically different results in the case.  That is particularly so because debtors in possession are required by the Code to act in the best interests of the creditors.  Thus, the trustee question is not whether a debtor should be dispossessed but whether a trustee is a better idea.  As trustees and debtors in possession operate under similar powers, the trustee appointment decision does not have particularly dramatic impact upon creditors - for whose benefit the chapter 11 proceeding exists.

Furthermore, the Appellant has cited to no First Circuit authority – and the UST knows of no such authority – for the proposition that a clear and convincing burden applies.  Thus, a party moving for the appointment of a chapter 11 trustee is held to a preponderance of the evidence burden of proof.

Appellant's reliance on Petit v. New England Mortgage Serv. Inc., 182 B.R. 64 (D. Me 1995) is misplaced.  The Petit court recognized that some courts require a showing of clear and convincing evidence of the need for appointment of a trustee, but stated that "the Court of Appeals for the First Circuit has never held so . . . ." Petit, 182 B.R. at 69.

In any event, the unrebutted evidence of the debtor's lack of candor in this case satisfied whatever test might be necessary to justify the appointment of a chapter 11 operating trustee.

16

## CONCLUSION

The bankruptcy court did not abuse its discretion in appointing a chapter 11 trustee in

Tradex. Accordingly, this Court should affirm the order of the bankruptcy court.

Respectfully submitted,
PHOEBE MORSE
United States Trustee
By her attorneys,

/s/Lisa D. Tingue
Lisa D. Tingue, BBO#633275
Trial Attorney
U.S. Department of Justice
Office of the U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608
Tel:    (508) 793-0555
Fax:    (508) 793-0558
E-mail: lisa.d.tingue@usdoj.gov

/s/ Phoebe Morse
Phoebe Morse
United States Trustee
U.S. Department of Justice
Office of the U.S. Trustee
E-mail: phoebe.morse@usdoj.gov

Dated: May 27, 2005

17

## CERTIFICATE OF SERVICE

I, Lisa D. Tingue, certify that on the 27th day of May, 2005, I caused true and accurate copies of the Appellant's Brief and the Appendix to Appellee's Brief to be served upon the following parties by ECF/and or federal express upon the parties listed below:

Juliane Balliro, Esq.
Paul A. Leoni, Esq.
Perkins, Smith & Cohen, LLP
1 Beacon Street, 30th Floor
Boston, Massachusetts 02108

M. Ellen Carpenter, Esq.
Roach & Carpenter, PC
24 School Street
Boston, Massachusetts 02108

Phoebe Morse
United States Trustee
Office of the United States Trustee
10 Causeway Street, Room 1184
Boston, MA 0222-1043

/s/Lisa D. Tingue
Lisa D. Tingue