UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
TRADEX CORPORATION,           )
      APPELLANT,              )        CIVIL ACTION NO.
                             )        05-10867-DPW
         v.                  )
                             )
PHOEBE MORSE, UNITED STATES  )
TRUSTEE,                     )
      APPELLEE.              )
```

MEMORANDUM AND ORDER
March 31, 2006

The president and sole shareholder of the debtor in possession seeks reversal, on behalf of the debtor, of the bankruptcy court's appointment of a trustee to take possession of Tradex Corporation ("Tradex" or "the debtor") as part of voluntary Chapter 11 bankruptcy proceedings. For the reasons stated below, I affirm the bankruptcy court's decision.

## I. Standard of Review

When a District Court reviews a decision of the bankruptcy court, findings of fact are upset only if clearly erroneous, but questions of law are subject to de novo evaluation. See Fed. R. Bankr. P. 8013; Sir Speedy, Inc. v. Morse, 256 B.R. 657, 658 (D. Mass. 2000) (citing In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995)). A discretionary decision of the bankruptcy court is overturned only when there has been abuse of that discretion. Neal Mitchell Assocs. v. Braunstein, 227 B.R. 1, 6 (1st Cir. 1998).

-1-

In order to give effect to those precepts in this case, however, I must determine the standards, as matters of law and fact, for the appointment of a bankruptcy trustee, as well as what, if any, discretion is afforded to a bankruptcy judge in making such a determination.

## II. Background

Tradex is a company that manages and leases a plastics manufacturing facility in Lunenberg, Massachusetts. Charles Gitto, Jr. is the president and sole shareholder of Tradex. On February 16, 2005, he signed a voluntary petition for relief under Chapter 11 of the bankruptcy code and became a debtor-in-possession. That petition did not conform with 11 U.S.C. § 521, which requires inclusion of a list of creditors, schedules of assets and liabilities, or a statement of financial affairs.[1] The day it was filed, the bankruptcy court ordered Tradex to file the required information. Tradex filed a motion a week later requesting extension of the deadline to file the financial information, a motion the court denied. On March 3, Tradex filed a § 521 statement.

On March 15, 2005, a meeting of creditors was held pursuant to § 341 of the bankruptcy code at the Worcester, Massachusetts

---

[1] 11 U.S.C. § 521(1):
The debtor shall--
(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . . .

-2-

office of the United States Trustee.  Mr. Gitto, asserting his
Fifth Amendment privilege, did not attend.  Instead, his wife,
Krista Gitto, the office manager of the debtor, appeared on
Tradex's behalf.  Aspects of her testimony, along with certain
pre-petition transactions of Tradex and an ongoing grand jury
investigation into fraud allegations relating, _inter alia_, to Mr.
Gitto and Tradex, caused concern on the part of the United States
Trustee, who on April 1, 2005, filed a motion with the bankruptcy
court to appoint a Chapter 11 trustee to replace Mr. Gitto.
Before the hearing on the motion, the United States Trustee
received a copy of the debtor's 2003 tax return, which heightened
the Trustee's concerns.  The debtor objected to the motion to
appoint a trustee on April 6, 2005, arguing that the Trustee had
not met her burden of establishing the need for such an
appointment under § 1104(a)(1) or (2).

On April 7, 2005, the bankruptcy court held a hearing on the
motion and relying upon both § 1104(a)(1) and (2) with a brief
order granted it from the bench.  Five days later, the Trustee
requested that Attorney Ellen Carpenter be appointed as trustee,
a request the court granted on April 13, 2005.  On April 18,
2005, the debtor sought reconsideration of the court's decision
to appoint a trustee.  The court denied the debtor's request the
following day, finding that the motion failed to meet the
requirements of Rule 59(e) and that the "new information"

-3-

regarding a loan was "insufficient to alter the previous decision of the Court" which "was based on several factors, including the principal's past dealings with the debtor."

Three days later Tradex appealed that decision to this court and filed a motion with the bankruptcy court requesting that appointment of the trustee be stayed pending appeal.[2]  The bankruptcy court denied that request on April 25, 2005.  On April 28, 2005, Tradex requested that I issue a stay pending appeal.  I denied that request on May 2, 2005, and put the appeal on an expedited briefing and hearing schedule.

While I was satisfied by the conclusion of the hearing that the Bankruptcy Court's decision to appoint the Trustee was plainly well founded, I found the case law unhelpful in explaining the relevant standards.  Consequently, I have taken some time to attempt to draft in this opinion a satisfactory basis for my decision to affirm the Bankruptcy Court.

### III. Discussion

#### A. Section 1104(a)

The bankruptcy code empowers a bankruptcy court to appoint a trustee in a Chapter 11 proceeding under certain circumstances.

---

[2] The United States Trustee moves [Doc. 5] to dismiss the appeal and to strike the brief of Mr. Gitto on grounds he is not a proper appellant.  In response, Mr. Gitto on behalf of the debtor moves [Doc. 7] to correct the brief by renaming the appellant as "Tradex corporation."  In order to  regularize the appellate record in this expedited appeal, I will allow recaptioning and consequently decline to dismiss the appeal.

Section 1104 of the Code provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

The appointment of a Chapter 11 trustee has been described as an "'extraordinary' act." Petit v. New England Mort. Servs., Inc., 182 B.R. 64, 68 (D. Me. 1995) (quoting In re Ionosphere Clubs, Inc., 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)); see Rivermeadows Assocs., LTD., 185 B.R. 615, 617 (Bankr. D. Wyo. 1995) ("extraordinary step"); In re Ford, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983); In re Deena Packaging Indus., Inc., 29 B.R. 705, 706 (Bankr. S.D.N.Y. 1983). The default position is that current management will retain control of the company, see In re Garland Corp., 6 B.R. 456, 460 (B.A.P. 1st Cir. 1980); In re The Bible Speaks, 74 B.R. 511, 512 (Bankr. D. Mass. 1987), consistent with the "belief that current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." In re

<u>Savino Oil & Heating Co.</u>, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989)).  Courts consistently refer to this default position as a "presumption."  <u>See, e.g.</u>, <u>In re Justus Hospitality Properties, LTD.</u>, 86 B.R. 261, 267 (Bankr. M.D. Fla. 1988); <u>In re St. Louis Globe-Democrat</u>, 63 B.R. 131, 138 (Bankr. E.D. Mo. 1985) ("It is well-established that there is a strong presumption that a debtor in possession in a reorganization case should be permitted to continue to control and manage its estate."); <u>Ford</u>, 36 B.R. at 504 (same); <u>see also</u> <u>In re Sharon Steel Corp.</u>, 871 F.2d 1217, 1225 (3d Cir. 1989) (appointment of a trustee "should be the exception, rather than the rule"); <u>Deena Packaging</u>, 29 B.R. 706-07.  But, it has also been said that § 1104 "represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in possession."  <u>Savino</u>, 99 B.R. at 525; <u>see</u> <u>In re Sanders</u>, 2000 Bankr. LEXIS 263, at *8 (Bankr. N.D. Ill., March 2, 2000); <u>In re Bellevue Place Assocs.</u>, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994); <u>In re Colorado-Ute Electric Assoc., Inc.</u>, 120 B.R. 164, 173-74 (Bankr. D. Col. 1990).

Once the party seeking a trustee meets its burden, the court is seemingly required to -- in the words of the statute, it "shall", 11 U.S.C. § 1104(a) -- appoint a trustee.  <u>In re G-I Holdings, Inc.</u>, 385 F.3d 313, 318 (3d Cir. 2004); <u>see</u> <u>In re Oklahoma Refining Co.</u>, 838 F.2d 1133, 1136 (10th Cir. 1988)

("Once the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee."); <u>Colorado-Ute</u>, 120 B.R. at 174; <u>St. Louis Globe-Democrat</u>, 63 B.R. at 138 ("[W]here clear and convincing evidence is offered to prove that 'cause' exists . . . then the Court has no discretion but must appoint a trustee.").[3] <u>Cf. Petit</u>, 182 B.R. at 69 ("Indeed, some courts have read this section of the statute as mandating the appointment [sic] a trustee when there are findings of the circumstances described in subsection (a)(1).").

**B. Standard of Proof**

Although it is undisputed that the party seeking appointment of a trustee bears the burden of persuasion, a question remains regarding the standard of proof necessary to meet the burden.

The First Circuit has not addressed the approach a court should take in determining whether to appoint a trustee.  The First Circuit Bankruptcy Appellate Panel in <u>Garland</u> did comment in an opinion by now Circuit Judge Cyr that the

> appropriateness of the decision to appoint a reorganization trustee under Bankruptcy Code §§ 1104 & 151104 turns upon whether there was a sufficient showing of cause, including incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the

---

[3] Judge McDonald, in <u>In re St. Louis Globe-Democrat</u>, 63 B.R. 131 (Bankr. E.D. Mo. 1985), found that "[h]aving considered all the evidence of record, I must conclude that if the conduct of the Globe's current management is not fraudulent and dishonest, it is at a bare minimum a clear example of incompetence and gross mismanagement." <u>Id.</u> at 138.

> commencement of the case, or, in the alternative, a showing
> that the appointment would be in the best interests of the
> creditors and the estate.

<u>Garland</u>, 6 B.R. at 460.

Just a few weeks prior to the <u>Garland</u> decision, Judge
Gabriel described § 1104 as "a compromise providing for a
flexible standard for the appointment of a trustee." <u>In re</u>
<u>Eichorn</u>, 5 B.R. 755, 757 (Bankr. D. Mass. 1980). Although there
is a presumption that a debtor will remain in possession,
subsection (a)(1) "reflects criteria which mandate the
appointment of a trustee for cause." <u>Id.</u> "Under this subsection
the court's discretionary powers are circumscribed and are
limited to a judicial determination of whether 'cause,' as
defined, exists." <u>Id.</u> But as with the BAP in <u>Garland</u>, Judge
Gabriel did not delineate the standard of proof that must be
applied when taking up subsection (a)(1). Turning to subsection
(a)(2), he seemed to find the discretion of the bankruptcy court
not nearly so circumscribed as with subsection (a)(1). <u>Id.</u> at
758 ("Congress . . . has given the Bankruptcy Court the
flexibility under Section 1104, subsection (a)(2), to allow the
court to utilize its broad equity powers in determining whether
the appointment of a trustee would be in the best interests of
creditors, equity security holders and other interests of the
estate.").

Judge Pettine in <u>In re Cumberland Invest. Corp.</u>, 133 B.R.

-8-

275 (D.R.I. 1991), appears to have employed a clearly erroneous standard in his review of the bankruptcy court's factual findings regarding the need to appoint a Chapter 11 trustee, concluding that the court's "analysis of the voluminous evidence clearly supports his conclusion that the interest of the creditors required the appointment . . . ." Id. at 280.  And, in In re Crescent Beach Inn, Inc., 22 B.R. 155 (Bankr. D. Me. 1982) -- contrary to the citation to it in In re Nautilus of New Mexico, Inc., 83 B.R. 784 (Bankr. D.N.M. 1988) -- Judge Goodman, while placing the burden squarely on the moving party simply reviewed the evidence and found that he was "not persuaded" that "cause" existed.  Id. at 159-60.  The statutory provision was described in Crescent Beach Inn as "adopt[ing] a 'flexible standard for the appointment of trustees.'"  Id. at 160 (quoting In re Parr, 1 B.R. 453, 457 (Bankr. E.D.N.Y. 1979)).  But neither Judge Pettine nor Judge Goodman expressly addressed the standard of proof being applied.

It appears courts in the First Circuit courts have not directly determined what evidentiary standard to apply when determining whether a "sufficient showing" has been made for purposes of § 1104.  However, as Judge Carter in Petit observed: "although the First Circuit has never held so directly, many courts require a showing of clear and convincing evidence supporting the motion prior to" appointment of a trustee.  Petit,

-9-

182 B.R. at 69.

For example, the Third Circuit requires that the "party moving for appointment of a trustee . . . must prove the need for a trustee under either subsection [of § 1104(a)] by clear and convincing evidence." In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998); see G-I Holdings, 385 F.3d 313; Sharon Steel, 871 F.2d 1217. The Fifth Circuit has also held that the moving party must meet its burden by "clear and convincing evidence." In re Cajun Elec. Power Coop., Inc., 69 F.3d 746, 749 (5th Cir. 1995).

A number of bankruptcy courts have joined the Third and Fifth Circuits in applying a "clear and convincing" evidentiary standard. See, e.g., Sanders, 2000 Bankr. LEXIS 263, at *8, March 2, 2000) ("The appointment of a trustee is an extraordinary remedy that requires proof by clear and convincing evidence.") (citing Bellevue Place, 171 B.R. at 623); Rivermeadows, 185 B.R. at 617 ("Because courts view a chapter 11 trustee appointment as an extraordinary step, the movant is generally required to present clear and convincing evidence of a trustee's necessity."); Colorado-Ute, 120 B.R. at 173; Nautilus, 83 B.R. at 788; In re William A. Smith Construction Co., 77 B.R. 124, 126 (Bankr. N.D. Ohio 1987).

Despite the fact that various courts have pronounced the appointment of a Trustee to be "extraordinary" and available only

-10-

if the factual predicate is established by "clear and convincing"
evidence, as a practical matter, whether the party has met its
burden has consistently been left within the discretion of the
bankruptcy court.  The nature of that deference has been
described in differing ways that further muddle the standards to
be applied in reviewing a Trustee appointment decision.

    Some courts, including the First Circuit Bankruptcy
Appellate Panel, have said they must "accept the findings of the
bankruptcy judge unless clearly erroneous." Garland, 6 B.R. at
460.  In Garland, this led the BAP to conclude that the "findings
of fact are amply supported by the record, and the conclusions of
law, freely reviewable on appeal, comport with the legislative
prescriptions of sections 1104(a) . . . ." Id. at 461 (citation
omitted).  Cf. In re Paolino, 60 B.R. 828, 829 (E.D. Pa. 1986)
("The factual determinations made by the bankruptcy judge must be
accepted by this court, unless I am convinced that they are
clearly erroneous.  While I freely concede that reasonable minds
might differ as to the extent and seriousness of the debtor's
derelictions, by no stretch of the imagination can the
bankruptcy's judge's findings be deemed clearly erroneous.").

    By contrast, the Fifth Circuit, in Cajun Electric, has said
that the "district court's appointment of a trustee is reviewable
only for abuse of discretion." Cajun Electric, 69 F.3d at 749
(citing Sharon Steel, 871 F.3d at 1225-26; In re Dalkon Shield

-11-

Claimants, 828 F.2d 239, 242 (4th Cir. 1987)); see also Bellevue
Place, 171 B.R. at 623 ("A determination of whether cause exists
to appoint a Chapter 11 Trustee is within the discretion of the
court and due consideration must be given to the various
interests in the bankruptcy proceeding."); see also G-I Holdings,
385 F.3d at 318.  But see Deena Packaging, 29 B.R. at 706
("Appointing a trustee for cause is not a discretionary function
and necessarily includes a showing of 'fraud, dishonesty,
incompetence, or gross mismanagement of the affairs of the debtor
by current management, either before or after the commencement of
the case.").[4]  And, in Sharon Steel, the Third Circuit rejected a
clearly erroneous standard, as embraced by the First Circuit
Bankruptcy Appellate Panel in Garland, and adopted "an abuse of
discretion standard."  Sharon Steel, 871 F.3d at 1225.

Despite the differing language used, there is widespread and
consistent deference afforded to the bankruptcy court.  See,
e.g., Sharon Steel, 871 F.2d at 1226 ("While § 1104(a) mandates
appointment of a trustee when the bankruptcy court finds cause --

---

[4]Although the court in In re Deena Packaging Indus., Inc.,
29 B.R. 705 (Bankr. S.D.N.Y. 1983), highlights the mandatory
nature of § 1104(a)(1), providing important insight into the
tension between discretionary functions and the provisions of the
code section, its reasoning appears to be based on a misreading
of the statute.  The court does, in a footnote, include the
entire text of § 1104(a), id. at 706, n.2, but then finds that
appointment under (a)(1) "necessarily includes" a showing of one
of the examples listed therein.  Id. Subsection (a)(1), however,
does not limit "cause" to only the provided examples.

seemingly requiring plenary review, 'a determination of cause . . . . is within the discretion of the court.'") (quoting <u>Dalkon Shield Claimants</u>, 828 F.2d at 242); <u>Dalkon Shield Claimants</u>, 828 F.2d at 241 ("The concepts of incompetence and dishonesty cover a wide spectrum of conduct and . . . . the court has broad discretion in applying such concepts to show cause.").

The bankruptcy court appears to enjoy even more sweeping discretion under subsection (a)(2). <u>See</u> <u>In re Clinton Centrifuge, Inc.</u>, 85 B.R. 980, 983 (Bankr. E.D. Pa. 1988) ("[P]ursuant to § 1104(a)(1), a court must appoint a trustee once 'cause' is found; while section 1104 (a)(2) leaves the court with broad discretion to determine whether the interests of all constituencies would benefit from the appointment of a disinterested trustee.") (citation omitted); <u>see also</u> <u>Sovino</u>, 99 B.R. at 527 n.11. ("We would only note that the factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."); <u>see</u>, <u>e.g.</u>, <u>Sharon Steel</u>, 871 F.2d at 1226 ("Subsection (a)(2) emphasizes the court's discretion, allowing it to appoint a trustee when to do so would serve the parties' and estate's interests.") <u>William A. Smith</u>, 77 B.R. at 126 ("The 'for cause' standard of § 1104(a)(1) is more circumscribed, whereas under § 1104(a)(2) the Court has wider discretion to use its broad equity powers."); <u>Deena Packaging</u>, 29 B.R. at 708

(finding that, even in the absence of "cause", it is "empowered under section 1104(a)(2) to appoint a trustee to protect Flushing's rights as a creditor").[5]

In applying that discretion, some courts have supplied a list of factors to consider. For example, the <u>Colorado-Ute</u> court advised that,

> [a]s to whether the appointment of a trustee is in the best interest of creditors pursuant to Section 1104(a)(2), the court should 'eschew rigid absolutes and look to the practical realities and necessities.' The court should also consider the following four factors:
>
>> (i) the trustworthiness of the debtor;
>>
>> (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
>>
>> (iii) the confidence -- or lack thereof -- of the business community and of creditors in present management;
>>
>> (iv) the benefits derived by the appointment of a trustee, balanced against the costs of appointment.

<u>Colorado-Ute</u>, 120 B.R. at 176 (citations omitted).

Having canvassed this case law, I have come to conclude that an appointment court need find the factual predicates -- "cause" or the best interests of relevant parties -- by only a preponderance of the evidence. Clear and convincing evidence is

---

[5]"It should be noted that the remarks of the [statute's] sponsors indicate that the court may appoint a trustee under subsection (a)(2) even though the party requesting such appointment is unable to establish the requisite 'cause' required for an order of appointment of a trustee under subsection (a)(1)." 7 Collier on Bankruptcy § 1104.02[3][d] (15th ed. rev.).

not required.  Recognizing that this is contrary to the explicit
statements of most other courts that have directly addressed the
subject, I nevertheless believe it is consistent with the
reasoning and approach undergirding the case law in this area.
Indeed, after describing the burden as "clear and convincing" and
citing the extraordinariness of appointing a trustee, courts
generally take up the question as one falling with the discretion
of the bankruptcy courts, to which they defer, and do so in a way
that directly or indirectly hollows out the "clear and
convincing" standard cited.

More general Supreme Court reasoning in the bankruptcy realm
suggests that the reflexive endorsement of a demanding "clear and
convincing" evidentiary burden regarding trustee appointment
under § 1104 is anomalous.  In Grogan v. Garner, 498 U.S. 279
(1991), a unanimous Court determined that a preponderance of the
evidence standard should be applied when determining whether the
exception to discharge provided for by 11 U.S.C. § 523(a)(2)(A)
had been met.  See also Palmacci v. Umpierrez, 121 F.3d 781, 787
(1st Cir. 1997) ("The standard of proof of each element of a §
523 claim is by a preponderance of the evidence.").  Cf. In re
Sterman, 244 B.R. 499, 504 (D. Mass. 1999) ("Under section 727(a)
of the Bankruptcy Code, the burden of persuasion rests with the
party opposing the discharge.  The objecting party must prove
each element of its objection to a discharge by a preponderance

of the evidence.") (citations omitted).

The statutory language addressed by <u>Grogan</u> provides that

(a) A discharge under section 727, 1141, 1228(a), 1228(b),
or 1328(b) of this title does not discharge an individual
debtor from any debt --

    * * * *

(2) for money, property, services, or an extension, renewal,
or refinancing of credit, to the extent obtained by --

(A) false pretenses, a false representation, or actual
fraud, other than a statement respecting the debtor's or
insider's financial condition . . . .

11 U.S.C. § 523(a). The Court's reasoning in applying a
preponderance standard for establishing such causes not to
discharge counsels against imposing a heightened evidentiary
standard elsewhere in the bankruptcy context without express
congressional direction.

    <u>Grogan</u> noted that the statute and its legislative history,
along with that of its predecessor "does not prescribe the
standard of proof for the discharge exceptions" and that "[t]his
silence is inconsistent with the view that Congress intended to
require a special, heightened standard of proof." <u>Grogan</u>, 498
U.S. at 286. And, in determining whether a heightened standard
is appropriate, the court observed that "[b]ecause the
preponderance-of-the-evidence standard results in a roughly equal
allocation of risks of error between litigants, we presume that
this standard is applicable in civil actions between private

-16-

litigants unless 'particularly important individual interests or rights are at stake.'" <u>Id.</u> (quoting <u>Herman & MacLean v. Huddleston</u>, 459 U.S. 375, 389-90 (1983)). The Court did not find any such interests implicated in <u>Grogan</u> and I find none exist here.

A "presumption" that a debtor remain in possession is, to be sure, based on the notion that the debtor is generally best equipped to oversee the company's reorganization. This basis touches on the "fresh start" policy of the code: "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" <u>Id.</u> (quoting <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934)). The <u>Grogan</u> Court, however, was "unpersuaded by the argument that the clear-and-convincing standard is required to effectuate" this policy, as am I in this setting. The policy is designed to provide an "unencumbered new beginning to the 'honest but unfortunate debtor.'" <u>Id.</u> at 286-87 (quoting <u>Local Loan Co.</u>, 292 U.S. at 244) and, the Court continued:

> The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts -- such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start.

-17-

> We think it unlikely that Congress, in fashioning the
> standard of proof that governs the applicability of these
> provisions, would have favored the interest in giving
> perpetrators of fraud a fresh start over the interest in
> protecting victims of fraud.  Requiring the creditor to
> establish by a preponderance of the evidence that his claim
> is not dischargeable reflects a fair balance between these
> conflicting interests.

Id. at 287.

The argument that § 1104(a)(1), by defining "cause" in a way

that includes fraudulent conduct, requires a heightened standard

is also vitiated by the reasoning of Grogan.  There, the court

found that "the fact that most States required fraud claims to be

proved by clear and convincing evidence would not support the

conclusion that Congress intended to adopt the clear-and-

convincing standard for the fraud discharge exception."  Id. at

288.

> Unlike a large number, and perhaps a majority, of the
> States, Congress has chosen the preponderance standard when
> it has created substantive cause of action for fraud.  Most
> notably, Congress chose the preponderance standard to govern
> determinations under 11 U.S.C. § 727(a)(4), which denies a
> debtor the right to discharge altogether if the debtor has
> committed a fraud on the bankruptcy court.

Id. at 288-89 (citations omitted).

Here, also, there is no reason to import from the common law

of certain states a heightened standard of proof to establish a §

1104(a) exception, especially where there are so many recognized

bases for appointing a trustee other than fraud.  Congress did

not distinguish fraudulent from non-fraudulent grounds.  Nor did

-18-

it indicate a specific evidentiary standard.  Consequently, Grogan teaches that there is no reason to establish a heightened burden on the moving party.

Turning back to the implied foundation of the "presumption" that current management can best run the debtor's business and its implications for a "clear-and-convincing" standard in the lower court case law, it must be recognized that if what is ordinarily true is equated with a strong presumption, then a presumption is triggered in almost all civil contexts.  People are not normally negligent, and one could say it is "extraordinary" when individuals are "grossly" negligent, but that has not warranted a heightening of the burden of proof in civil cases.  There is even less reason for heightened burdens in bankruptcy proceedings in general, where the court is given broad equitable powers, and in the § 1104(a) context in particular, where numerous considerations requiring some balancing are placed before the bankruptcy court by the statute itself.

Consequently, I conclude that under § 1104(a), factual findings for appointment of a trustee must be made to a preponderance of the evidence by the appointing judge, and should be reviewed under a clearly erroneous standard, while the determination that such evidence is sufficient to show cause for appointment will be evaluated for an abuse of discretion.  If the factual findings supporting the determination are not clearly

erroneous and the discretionary choice falls within the range of reasonable judicial determinations, there is no basis to find such an appointment to be out of the permissible bounds of § 1104(a).[6]

In sum, although I reject the adoption of the "clear and convincing" evidentiary standard found in the case law, I believe that I am simply following the implications of Grogan for bankruptcy law when Congress has not explicitly adopted a standard different from the traditional preponderance standard. What is clear from the cases is that absent an application to the court, a debtor will retain possession; that if an application is made, the moving party must establish "cause" or "interest" by a preponderance, and that, in deciding that motion, a bankruptcy court -- in accordance with its broad discretionary powers -- must be persuaded that the occasion exists for appointment of a trustee. There is no persuasive explanation provided for requiring a clear and convincing standard of evidentiary proof, and in light of Grogan, despite consistent invocation by other

_____

[6]    There is arguably some tension in this formula because the statute would seem to require a trustee to be appointed whenever the factual predicate -- whether cause under (a)(1) or the interests of creditors, et al., under (a)(2)-- is found. Thus, in theory there would be no discretion to abuse, once the factfinding is found not clearly erroneous.  But the evaluation of "cause" or "interest" remains open textured enough that even if the discretion is actually being exercised at the level of factfinding regarding those predicates, it would be less than candid not to recognize that a reviewing court will be influenced by a sense of whether discretion is being abused.

lower courts, I do not believe the First Circuit would or should adopt such a heightened standard.[7]

### C. Bankruptcy Court's Decision

Turning to the case at hand, the parties offer no reason to question that the judge was persuaded, at least by a preponderance of the evidence, that both (a)(1) and (a)(2) were satisfied.  The bankruptcy court did not explain its expedited decision in great detail.  I will, therefore, review the arguments and information it was provided to determine whether a sufficient factual basis exists for the court, within its discretion, to conclude that the requirements of § 1104(a) had been met.

The Trustee summarized the bases upon which its request for a trustee appointment rest:

> Verified documents and testimony proffered by the Debtor
> revealed that the Tradex through its principal, Gitto,
> failed to make straightforward and accurate disclosures to
> the court when the Debtor's schedules did not include all
> the Debtor's assets, liabilities, and payments made to
> insiders.  The documents and testimony also revealed that
> Gitto improperly engaged in questionable inter-company

---

[7] I note that at least one other court has expressly applied a preponderance of the evidence standard to a § 1104 case based on the holding in Grogan v. Garner, 498 U.S. 279 (1991).  See In re Altman, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999) ("This court will follow Grogan which instructs that in the absence of an express congressional direction to apply a higher standard of proof, the test should generally be the preponderance of the evidence.  There is no such express intent in the language of § 1104."), vacated in part on other grounds by 254 B.R. 509 (D. Conn. 2000).

transactions and commingled the affairs of Tradex with those
of Gitto Global by causing Tradex to grant a mortgage on its
assets to collaterize [sic] a sale for the benefit of Gitto
Global.  Moreover, Tradex and Gitto were unable to
substantiate Tradex's undocumented acquisition of the
Vitrolite inventory.  In addition, a grand jury
investigation into allegations of fraud on the part of
Tradex and Gitto was underway, which militated in favor of a
trustee because this meant the debtor's management would be
devoting significant attention to that matter - time that
necessarily would come at the expense of the debtor's
critical efforts to simultaneous reorganize and thereby
enhance creditor recoveries.  Further Gitto's decision to
not make himself available to answer questions regarding the
business and financial affairs of the Debtor meant the
Debtor could not explain the serious inconsistencies between
the debtor's tax returns and the statements the debtor made
under penalty of perjury in it s bankruptcy filing. . . .
Furthermore the Debtor's creditors have levied substantial
allegations, through related litigation and through
Clinton's relief from stay motion, of bad faith, fraud and
serious law enforcement violations.  Finally, the bankruptcy
court had previously found that Gitto had been siphoning
excessive management fees from the Debtor's cash flow.

(Appellee's Brief at 13-14 (citations omitted).)  Although

certain of these allegations are disputed -- in particular those

surrounding the Vitrolite inventory and the implication of the

court's finding regarding the "management fees" -- the bankruptcy

court appears to have credited a critical mass of the foregoing.

I begin by noting that the evidence before the bankruptcy

court, compared to that relied upon by other courts, would appear

sufficient to satisfy even a "clear and convincing" standard.

The bankruptcy court did not expressly apply such a heightened

standard, however, and nor, for the reasons set forth above, do

I.

First, and perhaps most importantly, the inconsistencies and inaccuracies arising in the § 341 process raise serious concerns. "One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization." Sovino, 99 B.R. at 526. Consequently, "[w]here, as here, the Debtor fails to disclose material and relevant information to the Court and creditors, a Chapter 11 trustee is required." Id.; see In re Oklahoma Refining Co., 838 F.2d 1133, 1136 (10th Cir. 1988) ("It is also established that failure to keep adequate records and make prompt and complete reports justifies the appointment of a trustee."); Ford, 36 B.R. at 504 ("Inherent in debtor's fiduciary obligations under the Code is the duty to file accurate financial reports disclosing all transactions involving estate assets. . . . Any failure to file accurate financial statements is an omission contributing to cause for appointment of a trustee."); see also Sanders, 2000 Bankr. 263, at *11 ("Where a debtor fails to disclose material information to the Court and to the creditors, the appointment of a chapter 11 trustee is appropriate. Misrepresenting the facts of a debtor's financial situation constitutes grounds for the appointment of a trustee.").

More particularly, a failure to provide accurate schedules

to the court has been deemed sufficient "cause" under §
1104(a)(1).  See Sanders, 2000 Bankr. 263; see also Deena
Packaging, 29 B.R. at 707 ("Section 1104 . . . specifically
proscribes certain conduct by debtors in possession; dishonesty
is one such enumerated, prohibited act. . . .  [T]he trial record
reveals that Deena's failure to include relevant financial data
on their original and amended schedules raises questions of
dishonest conduct.").  The debtor first failed to submit
schedules and later, after a denial of a request for an extension
of time, submitted schedules contradicted by the testimony of
Mrs. Gitto and tax returns not filed until the eve of the hearing
held by the bankruptcy judge.  Such facts call into question Mr.
Gitto's assertion that these were simply oversights.  And, even
if they were, they are sufficient to raise questions about the
ability of the bankruptcy court and creditors to rely upon Mr.
Gitto's statements.  Moreover, to the extent Mr. Gitto attempts
to justify inaccurate statements by contending that Mrs. Gitto
did not have a thorough understanding of the issues, that
circumstance is his own doing.  His unwillingness to testify
prevents the bankruptcy court and creditors from receiving direct
information regarding the ongoing management of the company from
the person entrusted to act as a fiduciary.

The management of the company, Mr. Gitto contends, is so
simple that there is no need for a trustee appointment.  In this

regard, Mr. Gitto would have it both ways.  He talks about how
simple the business of the company is, yet cites the cost of a
trustee.  He emphasizes how he only needs to receive checks and
issue bills, but there were a series of unexplained "oversights"
regarding this "simple" business and, in seeking an extension of
time for filing its § 521 statement, the debtor referred to "the
extremely complicated nature of the case, including difficulties
accurately ascertaining and scheduling the Debtor's various
assets and liabilities."  (App. 361-62.)  To the extent the
business is simple, the cost of the trustee is minimized.
Moreover, the simplicity of the business weakens any
"presumption" that might exist regarding a debtor remaining in
possession.  The presumption after all is based on the idea that
a debtor is in the best position to understand the intricacies of
the industry.  As the court in <u>Petit</u> noted,

> the rationale for the presumption of a debtor remaining in
> possession of the estate has limited applicability here. In
> a typical Chapter 11 proceeding, the "Debtor" will be a
> business run by individuals with experience in that
> business.  As long as there are no findings of fraud or
> other mismanagement by the current management, it can be
> assumed that the business would fare better being run by
> experienced management during the reorganization process.
> Here the Debtor is an individual who owns only one remaining
> asset, the cause of action.  Thus, there is no "business"
> that requires day-to-day operation to generate profits.
> Accordingly, there is less of a need to have the Debtor
> continue in the management of her affairs.

<u>Petit</u>, 182 B.R. at 69 n. 7.  So too here, where the debtor
contends that all that needs to be done is the collection of rent

-25-

and the arrangement of a sale of Tradex.  There is no reason to question that a trustee can adequately perform these functions; and, there is substantial evidence calling into question the faith the court and debtors can have in the transparency and reliability of any statements made by Mr. Gitto, assuming that he is even willing to make statements on relevant matters.

The existence of a grand jury investigation and civil suits pursuing allegations relating to Mr. Gitto's business actions in regard to Tradex and other companies is also relevant to a determination regarding trustee appointment.  Cf. Oklahoma Refining, 838 F.2d at 1136 n.2 ("Case law also supports lenders' claims that debtor's effort to manage the company was impeded by the existence of at least four criminal cases pending against either the debtor's president . . . or some of the affiliated companies.").  Here, the bankruptcy judge was aware of such allegations not only through the trustee appointment process but also by virtue of overseeing a related bankruptcy proceeding.  It would be inconsistent with the discretion and equitable powers afforded a bankruptcy court judge not to permit him to add such knowledge and experience to the balance.

Finally, questionable business transactions with related companies may also serve as grounds for appointment of a trustee.  See Oklahoma Refining, 838 F.2d at 1136 ("There are many cases holding that a history of transactions with companies affiliated

with the debtor company is sufficient cause for the appointment
of a trustee where the best interests of the creditors
require.").  Such transactions appear in the record of the
Bankruptcy Court regarding the debtor and affiliated entities
here.

The bankruptcy court also referenced (a)(2) when appointing
the trustee.  One of the major debtors, LaSalle, voiced support
for appointment and another, Clinton, was silent as to
appointment at the hearing before the bankruptcy court.  LaSalle
is a plaintiff in a major lawsuit before me in the district court
against Mr. Gitto and other principals of related organizations.
Those proceedings and any resulting tensions between the parties
were considered sufficiently factual by the court when evaluating
the appropriateness of appointing a trustee.  7 Collier on
Bankruptcy §1104.02[3][d][ii] (15th ed. rev.).  The balance of
interests here were sufficient to support the factual predicate
under § 1104(a)(2).[8]

---

[8]Cf. St. Louis Globe-Democrat, 63 B.R. at 138 n.9 (citation
to Collier omitted):

> Veritas has also urged that the Court appoint a trustee
> under § 1104(a)(2).  It should be noted that (a)(2) is
> written in the conjunctive and thus requires a finding that
> the appointment is in the interests of creditors, any equity
> security holders, and other interests of the estate. The
> Court is firmly convinced that the appointment is in the
> best interest of the creditors and other interests of the
> estate.  However, upon the consideration of the evidence
> that was adduced, it is impossible to find that the
> appointment of a trustee is in the best interest of any
> equity security holders since, as sole shareholders, it

In sum, it is clear from the record placed before the bankruptcy court that inaccuracies and inconsistencies existed in the statements made by the debtor and its principals.  There is no basis to question this factual predicate, and I find that it would not have been an abuse of discretion for the court to determine that such evidence established "cause" under § 1104(a)(1).  There was also more information before the court from this case which, evaluated in light of his experience with this and related cases, supplied sufficient grounds to find "cause" existed for purposes of § 1104(a)(1) and that appointment was warranted under § 1104(a)(2).

In short, even if there was insufficient evidence "that fraud or some other section 1104(a)(1) ground actually existed, the testimony was more than adequate to demonstrate to the bankruptcy court the extent to which the Debtor's creditors cannot place confidence in her to carry out her fiduciary obligations in their interest." Petit, 182 B.R. at 70.  Cf. Oklahoma Refining,838 F.2d at 1136 ("It is clear, both from the

---

appears that Mr. and Mrs. Gluck are the only equity security holders in the Globe.  Since they are opposed to the appointment of a trustee, it is unreasonable under these circumstances to appoint a trustee pursuant to § 1104(a)(2).

This does not appear to be the common understanding of (a)(2)'s reach.  It is unlikely that Congress intended to provide sole shareholders with what would in effect be veto power of a section § 1104(a)(2) trustee appointment regardless of how clearly appointment was, on balance, in the interest of other relevant parties.

language of the statute and established case law, that the court need not find any of the enumerated wrongs in order to find cause for appointing a trustee. It is sufficient that the appointment be in the interest of creditors.").

### IV. Conclusion

For the foregoing reasons, the decision of the bankruptcy court to appoint a Chapter 11 trustee for TRADEX is AFFIRMED.

/s/ Douglas P. Woodlock

_____

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE